**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENNETH JOHN KLUTHE, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL[1], <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:16-cv-00742 - JLT <br><br> ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF KENNETH JOHN KLUTHE AND AGAINST DEFENDANT NANCY BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Kenneth John Kluthe asserts he is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the decision to deny his application for benefits. Because the ALJ failed to apply the proper legal standards in evaluating the credibility of Plaintiff's subjective complaints, the decision is **REMANDED** for further proceedings.

## **PROCEDURAL HISTORY**

Plaintiff filed his application for benefits on April 2, 2013, alleging disability beginning on February 13, 2013. (Doc. 13-6 at 2) The Social Security Administration denied the application at

---

[1] Nancy A. Berryhill is now Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Nancy A. Berryhill for her predecessor, Carolyn W. Colvin, as the defendant in this suit.

1

both the initial level and upon reconsideration. (*See generally* Doc. 13-4; Doc. 13-3 at 24) After requesting a hearing, Plaintiff testified before an ALJ on September 16, 2014. (Doc. 13-3 at 24) The ALJ determined Plaintiff was not disabled and issued an order denying benefits on November 2, 2014. (*Id.* at 21-33) When the Appeals Council denied Plaintiff's request for review on March 29, 2016 (*id.* at 2-5), the ALJ's findings became the final decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity ("RFC") to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.     Medical Background and Opinions**

Plaintiff worked "as a contractor installing flooring" and began experiencing low back/buttock pain in 2010. (Doc. 13-8 at 13) In addition, he began to have pain in both thighs around 2012. (*Id.*) When Plaintiff filed his disability applications, he asserted his conditions became disabling in February 2013. (Doc. 13-6 at 2)

In January 2013, Plaintiff had an MRI of his lumbar spine. (Doc. 13-8 at 13) Dr. James Teng determined Plaintiff's alignment was normal, and the bone marrow was "normal in signal without evidence of fracture or marrow replacing lesion." (*Id.*) Dr. Teng found Plaintiff had "a circumferential intervertebral osteophyte…at L2/3 level with prominent associated degenerative endplate changes;" "disk desiccation and disk height loss most prominent at L 2/3, L4/5 and L5/S1 levels;" "small disk bulge with mild central canal and bilateral neuroforaminal stenosis" at L2/3; and "a small disk bulge with no significant central canal or neuroforaminal stenosis" at the L4/5, L5/S1 levels." (*Id.* at 13-14)

Dr. Teng performed a pain management consultation on February 11, 2013. (Doc. 13-8 at 16) Plaintiff described his back and thigh pain as "constant achy and occasionally shooting," and said it ranged in severity from 4/10 to 9/10. (*Id.* at 16, 73) He reported his pain was aggravated by "sitting,

standing, walking, [and] working" and alleviated by medication or sitting in a recliner. (*Id.*) Dr. Teng observed that Plaintiff walked with an antalgic gait but did not appear to be in acute distress. (*Id.* at 16) Dr. Teng recommended a lumbar epidural steroid injection, to which Plaintiff consented. (*Id.* at 19, 76) Plaintiff received the injection on February 22, 2013. (Doc. 13-9 at 4, 15)

In March 2013, Plaintiff "called to report he [had] little pain relief" following the injection, and that his pain returned "back to its original[] level." (Doc. 13-8 at 11) He was instructed "to give the steroid another week to see if it help[ed] [relieve] his pain more." (*Id.*) A week later, Plaintiff visited Dr. Duong, and again reported that his epidural injection did not help. (*Id.* at 8) He stated that Motrin and Norco gave him "some relief." (*Id.*) On May 30, 2013, Dr. Teng administered another lumbar epidural steroid injection. (Doc. 13-9 at 44)

Dr. Daniel Jurich began treating Plaintiff on August 5, 2013, after Plaintiff moved to Bakersfield. (Doc. 13-10 at 10) Dr. Jurich noted Plaintiff "complain[ed] of moderately severe back pain located at the laterality: bilateral, paralumbar region." (*Id.*) Plaintiff reported he felt his "'legs give out' when walking moderate distances and standing for too long on his feet." (*Id.*) He stated the pain was "[a]ggravated by prolonged sitting, prolonged walking, bending forward, bending backward, twisting and turning, lift and twisting and bending." (*Id.*) Plaintiff informed Dr. Jurich that he had two epidural injections, after which he began having headaches. (*Id.*) Dr. Jurich determined Plaintiff had "decreased range of motion in rotation and side bending, mildly diminished extension and flexion;" tenderness at the base of his skull; and spasm in his neck muscles. (*Id.* at 11) Plaintiff refused further injections and a "referral to physical therapy due to previous lack of efficacy for him." (*Id.* at 12) Due to Plaintiff's "significant limitation in range of motion," Dr. Jurich ordered an x-ray, which showed a "[r]eversal of the normal cervical lordosis from C2-C7;" "[j]oint space narrowing [at] C3-4, C4-5, C5-6 and C7-7;" and "limitation of extension." (*Id.* at 12, 14-15)

At a follow-up appointment later in August 2013, Plaintiff continued to complain of "a moderately severe headache … occurring with intermittent severity," as well as a "moderately severe gout attack." (Doc. 13-11 at 4) Dr. Jurich observed Plaintiff walked with a normal gait, but had "swelling, decreased range of motion and pain, swelling and warmth around the joint" in his foot. (*Id.* at 5-6) He opined that Plaintiff's lumbar disc degeneration and arthropathy of lumbar facet were

"Stable/Unchanged, but Plaintiff continued to have a "[d]ecreased range of motion (in all directions) in his neck," but walked with a normal gait. (*Id.* at 5) Dr. Jurich noted he "strongly recommended physical therapy but [Plaintiff was] hesitant due to previous perceived inefficacy (sic) for his low back pain." (*Id.* at 6) Plaintiff agreed to start uric acid-lowering medication for his gout, by starting allopurinol and continuing daily Colchicine. (*Id.* at 7)

In September 2013, Plaintiff reported that his headache was not occurring on a daily basis, but he continued to have pain. (Doc. 13-11 at 29) He stated he was "unable to stand or sit longer than 10 minutes without pain." (*Id.*) Dr. Jurich observed that Plaintiff "exhibit[ed] decreased range of motion, tenderness and spasm" in his cervical spine. (*Id.* at 30) He advised Plaintiff "to do daily neck stretches and exercises since he refuse[d] physical therapy, and provided information regarding the exercises to Plaintiff. (*Id.* at 30, 32-34)

Plaintiff visited Dr. Jurich in October 2013, reporting he had sinus pain and high blood pressure. (Doc. 13-11 at 40) In addition, he stated that he "tried stopping his Norco but had pain after 2 days," so he resumed the medication. (*Id.* at 41)

In December 2013, Plaintiff continued describe "moderate back pain located at the paralumbar region," which he described as "6/10." (Doc. 13-11 at 50) He said he was "having a little more pain in the winter." (*Id.*) In addition, Plaintiff described "chronic neck pain with occasional headaches." (*Id.*) Dr. Jurich found Plaintiff "exhibited decreased range of motion, tenderness, and spasm" in the cervical spine, as well as "decreased range of motion and tenderness" in the lumbar spine. (*Id.*) Further, Plaintiff walked with an antalgic gate, using a cane. (*Id.*) Although continuing to report "he had a bad experience with physical therapy in the past," Plaintiff indicated he was "willing to give [it] another try." (*Id.*) Therefore, Dr. Jurich referred Plaintiff to physical therapy /occupational therapy. (*Id.* at 51)

On February 28, 2014, Plaintiff told Dr. Jurich that he "ha[d] been working with physical therapy and was told his left leg was shorter than his right." (Doc. 13-11 at 60) According to Plaintiff, his physical therapist determined that "his left leg was shorter than his right." (*Id.*) Upon examination, Dr. Jurich found Plaintiff's left lateral malleolus and patella were approximately one inch higher than the right leg. (*Id.* at 61) In addition, he found Plaintiff had "normal strength and reflexes" but walked with an antalgic gait. (*Id.*) Dr. Jurich opined Plaintiff's gout, hyperlipidemia, chronic rhinitis, lumbar

disc degeneration, and hypertension were "Stable/Unchanged." (*Id.*)

Dr. Jurich ordered an MRI of Plaintiff's lumbar spine, noting Plaintiff felt "[n]o relief with conservative treatment." (Doc. 13-11 at 78) On February 28, 2014, Dr. Anna Finklestein determined Plaintiff had "disk desiccation and disk height loss most prominent at L2/3, L4/5 and L5/S1." (*Id.*) She also found Plaintiff had "a small disk bulge with mild central canal and bilateral neuroforaminal stenosis" at the L2/3 level; "a small diffuse disk bulge and facet hypertrophy with no significant central canal stenosis and bilateral neuroforaminal stenosis" at the L4/5 level; and "a small disk bulge with no significant central canal or neuroforaminal stenosis." (*Id.* at 78-79)

In March 2014, Dr. Jurich noted Plaintiff continued to complain of low back and neck pain, which had increased in February. (Doc. 13-11 at 77) Plaintiff described the pain as a "4/10," stating that it was "aching and sharp, and chronic and constant." (*Id.* at 77-78) Dr. Jurich noted Plaintiff "exhibited decreased range of motion, tenderness, deformity (left iliac crest lower) and pain." (*Id.* at 79) Plaintiff had a normal straight leg raise test, and walked with a normal gait. (*Id.*)

In July 2014, Plaintiff sought treatment "after falling down stairs at home." (Doc. 13-12 at 15) He reported that "his back gave out and he stumbled falling down a flight of stairs." (*Id.*) Plaintiff walked with a cane and exhibited " a great deal of swelling after the injury." (*Id.*)

Dr. Jurich completed a Medical Source Statement regarding Plaintiff's limitations and abilities on July 25, 2014. (Doc. 13-12 at 36-40) Dr. Jurich noted he saw Plaintiff approximately every three months, and he had diagnosed Plaintiff with "Chronic Low Back Pain [and] Lumbar Disc Degeneration with Facet Arthropathy." (*Id.* at 36) He noted Plaintiff had exhibited several "positive objective lumbar signs," including: reduced range of motion with flexion and flexion that was "moderate-severe" in both the lumbar and cervical spine, "limited range of motion in [his] neck," an abnormal gait, tenderness, and muscle spasms in the lumbar and cervical spines. (*Id.* at 36-37) Dr. Jurich believed Plaintiff's pain was severe enough to constantly interfere with his attention and concentration for even simple work tasks. (*Id.* at 37) Further, Dr. Jurich opined Plaintiff could walk one block without severe pain, sit for thirty minutes at one time and for two hours total in an eight-hour day, and stand for fifteen minutes at one time or less than two hours in an eight-hour day. (*Id.* at 38) According to Dr. Jurich, Plaintiff needed the option to shift positions at will and take unscheduled breaks about every thirty

minutes. (*Id.* at 38-39) He noted Plaintiff could never stoop, crouch or squat; rarely look down, turn his head, look up, twist, climb ladders, or climb stairs; and occasionally hold his head in a static position. (*Id.* at 39) Dr. Jurich also opined Plaintiff could occasionally lift and carry less than ten pounds, handle items about 50% of a normal workday, perform fine manipulations about 50% of a normal workday; and reach overhead about 20% of a workday. (*Id.*) Finally, Dr. Jurich noted that "[t]emperature extremes make [Plaintiff's] pain worse so this should be avoided." (*Id.* at 40)

**B.     Administrative Hearing Testimony**

    1.     Plaintiff

Plaintiff testified that he worked as a floor installer for about 34 years. (Doc. 13-3 at 46, 48) He reported he stopped working due to problems with his back, including pain and spasms. (*Id.* at 48) In addition, he said that he had "problems sitting and standing for extended periods of time." (*Id.* at 51)

He stated that he also had issues with gout, and a flare could last "a couple of days." (Doc. 13-3 at 53) Plaintiff said his medication helped prevent attacks, and the last occurred about four or five months prior to the hearing. (*Id.*) Plaintiff reported he was able to walk when having a gout attack, but it was "very uncomfortable" and he would use his cane. (*Id.*) He said he also used the cane "a lot" for his back, such as when he had spasms or felt pain shooting to his legs and feet. (*Id.*)

In addition, Plaintiff said he had difficulties with his hands, and felt they "lock up" when "doing something tedious" or repetitive. (Doc. 13-3 at 63) He stated that when using his hands normally, they were "okay." (*Id.* at 64)

Plaintiff reported he took "between two and three pills a day" of Norco and gabapentin each night for pain, as well as "baclofen, muscle relaxers" for headaches. (Doc. 13-3 at 56, 64) Plaintiff believed his medication did not "allow [him] to really do much" because the medicine made him "drowsy and kind of dingy sometimes." (*Id.* at 52) Plaintiff said also that he was not able to drive a car while taking that medication. (*Id.*) Plaintiff reported his medication did not take away his pain, but eased it. (*Id.* at 56)

He believed he was able to "some housework" such as washing dishes but had to stand in a manner to rest his arms on the sink and support his back. (Doc. 13-3 at 57) He estimated that he was able to stand about 15 to 25 minutes at one time before he needed a break but only about 15 minutes

7

before he needed to change positions. (*Id.*) He stated he could walk "about a city block" while using his cane, which would take between five to ten minutes. (*Id.* at 58) Further, Plaintiff said he could "sit for probably like 30 minutes but… [could] force [himself] to sit longer—but it is painful." (*Id.*) He believed that at most, he could sit "45 minutes – to an hour" before being in agony. (*Id.* at 59)

### 2. Medical experts

Dr. Francis, an orthopedic surgeon, testified he reviewed a portion of the medical record prior to testifying at the administrative hearing, including Exhibits 3F to 6F. (Doc. 13-3 at 66) Dr. Francis noted Plaintiff had been diagnosed with gout, headaches attributed to the cervical spine region, "multiple multilevel degenerative disc disease and facet joint arthritis in the lumbar spine," lumbar radiculopathy, chronic musculoskeletal pain, "marked degenerative joint disease" of the first metatarsophalangeal joint in the right foot due to gout, and carpal tunnel syndrome. (*Id.* at 66-67, 69)

According to Dr. Francis, Plaintiff's impairments did not meet or medically equal any Listing, including Listing 1.04A for radiculopathy, Listing 1.04C for spinal stenosis, or Listing 1.02A for degenerative joint disease. (Doc. 13-3 at 70) When asked to identify Plaintiff's residual functional capacity, Dr. Francis testified:

> This is a little bit difficult case to evaluate. Without his testimony and just looking at it, there would be doctors that would assign this a medium RFC which would be [lifting and carrying] 50 and 25 [pounds], stand and walk six out of eight [hours]. Other doctors might place this at a light RFC, which would be [lifting and carrying] 20 and 10 [pounds], stand and walk six out of eight [hours].
> I think that the marked degenerative joint disease that he has probably is going to limit his ambulation to either four or possibly two out of eight [hours]. In other words, he reasonably could be assigned a sedentary RFC based on all of the pathology that's here.
> It's a bit difficult to say he would be at a sedentary or less than sedentary just based on neck and pack pain, but he's got some other issues going on here…. And one of them is the use of the cane and the knee pain and then there's degenerative joint disease in the first MTP, which is, you know, sounds like kind of a small problem, but it isn't because of where it's at the weight you have to place on it.

(*Id.* at 71-72) Dr. Francis opined he believed Plaintiff could lift and carry 20 pounds occasionally and 10 frequently, "sit probably six out of eight or eight out of eight [hours];" frequently perform postural activities, with the exception of occasionally climbing ropes, ladders, and scaffolds; frequently perform manipulative limitations such as fingering, grasping, and motioning with his hand and wrist; and frequently perform range of motion activities such as reaching overhead. (*Id.* at 72-75) Dr. Francis

believed Plaintiff should avoid repetitive neck motions and could not "hold his neck in a sustained position for any period of time, say more than five minutes or --… ten minutes." (*Id.* at 76) Further, he opined Plaintiff had environmental restrictions, and needed to avoid unprotected heights, extreme industrial vibrations, and extreme cold. (*Id.* at 76) Finally, Dr. Francis indicated Plaintiff was limited to using foot controls for one third of the day with the left foot and two-thirds of the day with the right foot. (*Id.* at 76-77)

Dr. Francis said he "guess[ed]" the cane was "medically necessary" because the medical record indicated Plaintiff was using one, and "they didn't say that he shouldn't." (Doc. 13-3 at 78) He believed Plaintiff should be able to use the cane "[w]hen he feels like he needs it, [including] on an uneven ground and over long distances." (*Id.*)

Dr. Doherty, an internist, reported that he also reviewed Plaintiff's medical record prior to testifying at the administrative hearing. (Doc. 13-3 at 86) Dr. Doherty believed Plaintiff was "limited to sedentary work because of both his back and his gout and the pain that he has in his metatarsophalangeal joint and in one toe." (*Id.* at 90) Dr. Doherty testified that he "would not want [Plaintiff] to be in a position where he had to stand in a job which required him to stand and walk six out of eight hours." (*Id.*) Instead, he believed Plaintiff could stand and walk a combined total of four out of eight hours, and sit for a total of six hours with sit/stand option. (*Id.* at 94-95) Further, he opined Plaintiff could perform postural activities such as bending and lifting on an "occasional" basis, and was precluded from climbing ladders, ropes, and scaffolds. (*Id.* at 95-96) Dr. Doherty agreed with Dr. Francis that Plaintiff had limitations with range of motion and could not hold his neck in a sustained position. (*Id.* at 97) He also agreed with the environmental limits Dr. Francis identified, concluding Plaintiff should not be around unprotected heights, extremes of cold, or heavy industrial vibrations. (*Id.* at 98)

**C.     The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity after the alleged onset date of February 13, 2013. (Doc. 13-3 at 26) At step two, the ALJ found Plaintiff's severe impairments included: "obesity; cervical spine degenerative disc disease with referred headaches; bilateral carpal tunnel syndrome; bilateral knee pain; right foot degenerative

joint disease; and lumbar spine multilevel degenerative disc disease and facet arthritis with radiculopathy." (*Id.*) At step three, the ALJ determined Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a Listing. (*Id.* at 28) Next, the ALJ determined:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for the following limitations: lift/carry 10 pounds frequently, 20 pounds occasionally; stand/walk 4 hours in an 8-hour day and sit 6 hours in an 8-hour day, all with normal breaks; sit/stand option at will at the workstation; occasional postural except no ladder/rope/scaffold climbing; occasional pushing/pulling bilaterally; occasional foot controls with right leg/foot and frequent with the left; frequent manipulative activities but no repetitive constant motions; frequent should reach and activities bilaterally in all ranges of motion; frequent neck movements in all ranges of motion, but no repetitive movements or staying in one position for more than 5-10 [minutes]; no exposure to work at unprotected heights, or with heavy industrial vibrations, or extreme cold; and can use a can for walking on uneven ground or to walk long distances. No mental limitations.

(*Id.* at 28) Based upon this RFC, the ALJ concluded Plaintiff was "unable to perform any past relevant work." (*Id.* at 31) However, the ALJ found there were "jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 32) Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 32-33)

## **DISCUSSION AND ANALYSIS**

Plaintiff asserts the ALJ erred in evaluating the medical record and rejecting the opinion of his treating physician. (Doc. 20 at 17-21) In addition, Plaintiff contends the ALJ did not identify legally sufficient reasons to reject his credibility. *Id.* at 22-27) On the other hand, Defendant argues that "the ALJ's decision was supported by substantial evidence and free from reversible legal error." (Doc. 23 at 14)

**A.    Evaluation of the Medical Record**

Courts within the Ninth Circuit distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more

weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

A physician's opinion is not binding upon the ALJ, and may be discounted whether or not another physician contradicts the opinion. *Magallanes*, 881 F.2d at 751. An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only by identifying "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*, 81 F.3d at 830. When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld when there is "more than one rational interpretation of the evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff contends the ALJ erred in rejecting opinions offered by Dr. Jurich, his treating physician. (Doc. 20 at 17-21) Defendant argues that "the ALJ properly evaluated medical opinion evidence." (Doc. 23 at 7, emphasis omtted) Because opinions of Dr. Jurich were contradicted by other physicians— including Drs. Francis and Doherty— the ALJ was required to set forth specific and legitimate reasons to support the decision to reject the opinions. *See Lester*, 81 F.3d at 830.

Examining the medical evidence, the ALJ explained the weight given to Dr. Jurich's opinion as follows:

> In this case, Dr. Jurich's opinion is not consistent with, nor well-supported by the other substantial evidence of record. Dr. Jurich's opinion is inconsistent with *his own* treatment notes, which show mostly normal physical examinations and state that claimant's back pain is stable on his medication regimen (Exhibits 2F73 and 3F19). Therefore, Dr. Jurich's opinion is only given partial weight.

(Doc. 13-3 at 31, emphasis in original) Plaintiff contends the ALJ's reasons for rejecting the opinion of Dr. Jurich are not sufficient.

1. Conflict with the objective medical evidence

The Ninth Circuit has determined that an ALJ may reject limitations "unsupported by the record as a whole." *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831-32 (9th Cir. 2010) (citing *Batson v.*

11

*Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003)). Significantly, when an ALJ believes the treating physician's opinion is unsupported by the objective medical evidence, the ALJ has a burden to "set[] out *a detailed and thorough summary of the facts and conflicting clinical evidence*, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (emphasis added); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). For example, an ALJ may also discount the opinion of a treating physician by identifying an examining physician's findings to the contrary and identifying the evidence that supports that finding. *See, e.g., Creech v. Colvin*, 612 F. App'x 480, 481 (9th Cir. 2015).

The ALJ failed to identify the evidence that he believed conflicted with Dr. Jurich's opinion. Instead, the ALJ offered only his conclusion that the limitations identified by Dr. Jurich were "not consistent with, nor well-supported by the other substantial evidence of record," (*See* Doc. 13-3 at 31), without identifying the conflicting evidence. This unidentified conflict is not a specific, legitimate reason for rejecting Dr. Jurich's opinions regarding Plaintiff's physical limitations. *See Cotton*, 799 F.3d at 1408; *Reddick*, 157 F.3d at 725.

2. Conflict with Dr. Jurich's own treatment notes

The Ninth Circuit explained the opinion of a treating physician may be rejected where an ALJ finds incongruity between a treating doctor's assessment and his own medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (explaining inconsistencies supports the decision to discount the opinion of a physician).

The ALJ observed that "Dr. Jurich's opinion is inconsistent with *his own* treatment notes, which show mostly normal physical examinations and state that claimant's back pain is stable on his medication regimen." (Doc. 13-3 at 31, citing Exhibits 2F73 [Doc. 13-10 at 12] and 3F19 [Doc. 13-11 at 19]) Significantly, however, the records identified by the ALJ do not support the conclusion that Plaintiff had "normal" results upon physical examination. To the contrary, the treatment notes dated August 5, 2013 (including Exh. 2F, p. 73) indicate that Plaintiff "exhibit[ed] decreased range of motion

12

(decreased range of motion in rotation and sidebending, mildly diminished extension and flexion), tenderness (paracervical at [the] basis of [his] skull) and spasm (some hypertonicity of neck muscles)." (Doc. 13-10 at 11) Likewise, the records dated September 11, 2013, including the very page to which the ALJ refers, include findings that Plaintiff had disk desiccation and a "disk bulge with mild central canal and bilateral neuroforaminal stenosis." (Doc. 13-11 at 19)

Further, the ALJ appears to erroneously equate the finding that Plaintiff's condition was "stable" with his ability to perform activities. Given the difference between *stability* and *functionality*, courts have concluded an ALJ erred in rejecting physician's treatment notes based upon the physician's opinion that a condition was stable. *See e.g., Lule v. Berryhill*, 2017 U.S. Dist. LEXIS at *18 (E.D. Cal. Feb. 9, 2017) (finding the ALJ erred in rejecting the physician's opinion on the grounds that the conditions were stable, explaining that "[a]lthough Plaintiff's condition was 'stable' and not worsening, there is no indication the record that the stability of her condition rendered her able to perform work for an eight-hour day'"); *Richardson v. Astrue*, 2011 U.S. Dist. LEXIS 132843 at *18-19, 172 Soc. Sec. Rep. Service 69 (C.D. Cal. Nov. 17, 2011) (finding the ALJ erred where he "improperly equate[d] stability with functionality). Although Dr. Jurich opined Plaintiff's lumbar spine condition was "Stable/Unchanged" in August 2013, he noted also that Plaintiff had a "[d]ecreased range of motion (in all directions)" in his neck. (Doc. 13-11 at 5) Likewise, in 2014, Dr. Jurich noted Plaintiff's gout, chronic rhinitis, lumbar disc degeneration, and hypertension were "Stable/ Unchanged"—yet Plaintiff walked with antalgic gait and exhibited a decreased range of motion, tenderness, and deformity in the lumbar spine. (*Id.* at 61, 79) Thus, despite the stability of Plaintiff's conditions, Dr. Jurich identified significant postural, manipulative, and environmental limitations. (*See* Doc. 13-12 at 36-40) The ALJ fails to explain how these limitations are inconsistent with the objective signs identified by Dr. Jurich. (*See* Doc. 13-12 at 36)

3.   Conclusion

The Ninth Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Because the ALJ failed to identify specific conflicts with the medical

record and treatment notes of Dr. Jurich and the limitations he assessed, the ALJ failed to meet his burden. Likewise, because the ALJ erred in equating stability with functionality, the decision to give less weight to the limitations identified by Dr. Jurich is not supported by the record.

**B.     ALJ's Credibility Analysis**

In evaluating credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Where the objective medical evidence shows an underlying impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility finding must be based on clear and convincing reasons." *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Here, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-3 at 30) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible . . . ." (*Id.*) Thus, the ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony.

Factors that may be considered by an ALJ in assessing a claimant's credibility include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities when weighing the claimant's credibility). The ALJ considered the objective medical record, the treatment received, and his work history. (Doc. 13-3 at 30) Plaintiff contends the ALJ's analysis regarding these factors was flawed. (Doc. 17 at 22-27)

1.     Objective medical record

In general, "conflicts between a [claimant's] testimony of subjective complaints and the

objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor in determining Plaintiff's credibility.

The ALJ found "the objective medical evidence does not support the extent of claimant's alleged limitations." (Doc. 13-3 at 30) The ALJ provided a summary of the record, and noted that "[t]he medical evidence of record documents lumbar and cervical degenerative disc disease, but only mild central canal and neuroforaminal stenosis. (*Id.*) Again, the ALJ opined Plaintiff's "physical examinations [were] generally unremarkable."[2] (*Id.*)

Importantly, if an ALJ cites the medical evidence as part of a credibility determination, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). As the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC determination… is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to … ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). As a result, "the observations an ALJ makes as part of the summary of the medical

---

[2] As noted above, this conclusion is not supported by the medical record, which showed Dr. Jurich repeatedly found Plaintiff demonstrated a reduced range of motion, tenderness, and muscle spasms. (*See, e.g.*, Doc. 13-10 at 10; Doc. 13-11 at 5, 29, 50, 79)

15

record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistences in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible, and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered little more than a summary of the medical evidence, and he did not identify the testimony he did not find credible.

Given the ALJ's failure to "specifically identify what testimony is credible and what evidence undermines the claimant's complaints," the objective medical record fails to support the adverse credibility determination. *See Greger*, 464 F.3d at 972; *Brown-Hunter*, 806 F.3d at 494.

2. Treatment received

As part of the credibility evaluation, the ALJ indicated Plaintiff was "prescribed only conservative treatment." (Doc. 13-3 at 30) However, epidural steroid injections, such as those Plaintiff received, are "performed in operation-like settings" and are not a form of conservative treatment. *See Oldham v. Astrue*, 2010 WL 2850770, at *9 (C.D. Cal. 2010); *Tagle v. Astrue*, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not"). Therefore, the treatment Plaintiff received was not only conservative in nature, and this factor does not support the adverse credibility determination.

3. Failure to follow treatment

The Ninth Circuit has stated, "[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603. Therefore, noncompliance with a prescribed course of treatment is clear and convincing reason for finding a Plaintiff's subjective complaints lack credibility. *Id.; see also Bunnell v. Sullivan*, 947 F.2d at 346.

In this case, the ALJ determined Plaintiff was "less credible because he failed to follow several

16

of his doctor's treatment recommendations," such as taking allopurinol for gout, receiving additional epidural injections, and the initial recommendations for physical therapy. (Doc. 13-3 at 30) The ALJ apparently reasoned – though it is not entirely clear – that Plaintiff's refusal to seek more aggressive treatment suggests that his conditions were not as significant as he asserted. On the other hand, the medical record suggests that once Plaintiff conceded to the recommended treatments, such as allopurinol and physical therapy, and the treatments were actually *prescribed* by Dr. Jurich, Plaintiff complied with treatment. (*See e.g.*, Doc. 13-11 at 4, 29, 60)

Moreover, when determining whether a failure to seek more aggressive treatment actually supports a conclusion that the claimant's reports of pain are exaggerated, an ALJ must consider the explanation for pursuing only conservative treatments. *See Fair*, 885 F.2d at 603; *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015) (reversing denial of benefits where "the ALJ ignored explanations for the conservative treatment" because the claimant "was worried about the addictiveness of narcotic pain relievers"); *see also* SSR 96-7P, 1996 WL 374186 at *7 (ALJs must consider "any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment") Here, the ALJ failed to address Plaintiff's reasons for his initial refusal of more aggressive treatment options, including the reported lack of success with physical therapy and his first epidural injections, as well as the belief that his headaches were the result of the epidural injections. (*See, e.g.,* Doc. 13-10 at 10, 12; Doc. 13-11 at 6)

Because the ALJ failed to address explanation for Plaintiff's initial refusal of more aggressive treatment, this factor does not support the adverse credibility determination.

4.      Work history

"An ALJ is required to consider work history when assessing credibility." *Matthews v. Berryhill*, 2017 WL 3383118 at *12 (E.D. Cal. Aug. 7, 2017) (citing 20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 96-7p). "Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work." *Franz v. Colvin*, 91 F.Supp.3d 1200, 1209 (D. Or. 2015) (citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) ("[a]n ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility

17

determination").

The ALJ opined Plaintiff was "less credible as he was able to work as a floor layer for many years with his back pain." (Doc. 13-3 at 30) However, as the ALJ noted, Plaintiff did not engage in substantial gainful activity following his alleged disability onset of February 13, 2013. (Doc. 13-3 at 26) Further, Plaintiff reported an increase in his pain, as Dr. Jurich noted. (Doc. 13-11 at 77) Thus, it is not clear how Plaintiff's positive work history undermines the credibility of his subjective complaints —namely, that Plaintiff is no longer able to work due to pain in his neck, back, and hands. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (a claimant's work history does not support an adverse credibility determination if the claimant "experience[d] pain and limitations severe enough to preclude him from maintaining substantial gainful employment).

### 5. Conclusion

The ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958. The ALJ's failure to specifically discuss and identify what portions of Plaintiff's testimony that he found not credible also constituted a failure to apply the correct legal standards in evaluating the credibility of Plaintiff's testimony. As a result, the reasons for rejecting Plaintiff's credibility cannot be upheld by the Court.

## C. Remand is Appropriate

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed

where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). Here, the ALJ failed to identify legally sufficient reasons for rejecting the limitations assessed by Plaintiff's treating physician, Dr. Jurich. Therefore, the matter should be remanded for the ALJ to re-evaluate the medical evidence to determine Plaintiff's physical residual functional capacity. *See Moisa*, 367 F.3d at 886.

In addition, a remand for further proceedings regarding the credibility of a claimant is an appropriate remedy. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . ."). Here, the findings of the ALJ are insufficient to determine whether Plaintiff's statements should be credited as true. Consequently, the matter should be remanded for the ALJ to re-evaluate the evidence.

## CONCLUSION AND ORDER

For the reasons set forth above, the Court finds the ALJ erred in evaluating the medical evidence and the credibility of Plaintiff's subjective complaints. As a result, the Court should not uphold the administrative decision. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Kenneth Kluthe and against Defendant, Nancy Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **February 8, 2018**  /s/ Jennifer L. Thurston
UNITED STATES MAGISTRATE JUDGE

19